William C. Baton
Alexander L. Callo
**SAUL EWING LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102
wbaton@saul.com

*Attorneys for Plaintiff*
*Supernus Pharmaceuticals, Inc.*

OF COUNSEL:

Edgar H. Haug
Nicholas F. Giove
Andrew Wasson
Kaitlin M. Farrell
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| **SUPERNUS PHARMACEUTICALS, INC.,** | Civil Action No. _____ |
| **Plaintiff,** | **COMPLAINT FOR PATENT INFRINGEMENT** |
| **v.** | **(Filed Electronically)** |
| **MSN PHARMACEUTICALS INC.,** | |
| **Defendant.** | |

Plaintiff Supernus Pharmaceuticals, Inc. ("Supernus" or "Plaintiff"), by its undersigned attorneys, for its Complaint against Defendant MSN Pharmaceuticals Inc. ("MSN" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1.     This is a civil action for patent infringement arising under the patent laws of the United States, Title 35, United States Code, involving United States Patent Nos. 9,358,204 ("the '204 patent"); 9,603,853 ("the '853 patent"); 9,662,338 ("the '338 patent"); 11,324,753 ("the

'753 patent"); 11,458,143 ("the '143 patent"); and 12,121,523 ("the '523 patent"), attached

hereto as Exhibits A–F (collectively, "the patents-in-suit").

## THE PARTIES

2.      Plaintiff Supernus is a corporation organized and existing under the laws of

Delaware, having a place of business at 9715 Key West Avenue, Rockville, Maryland 20850.

3.      Upon information and belief, defendant MSN Pharmaceuticals Inc. is a Delaware

corporation with a principal place of business at 20 Duke Road, Piscataway, New Jersey 08854.

4.      Upon information and belief, MSN is in the business of, inter alia, developing,

manufacturing, marketing, distributing, and directly and/or indirectly selling generic

pharmaceutical products throughout the United States (including in the State of New Jersey), and

importing generic pharmaceutical products into the United States (including into the State of

New Jersey).

5.      Upon information and belief, MSN, either directly or through one or more of its

affiliates and/or agents, develops, manufactures, distributes, markets, offers to sell, and sells

generic pharmaceutical products, including in the State of New Jersey.

6.      Upon information and belief, MSN is registered with the State of New Jersey's

Treasury Department Division of Revenue and Enterprise Services as a business operating in

New Jersey with Business Identification Number 0400627791.  Upon information and belief

MSN is registered with the State of New Jersey's Department of Health as a "Manufacturer and

Wholesale[r]" with Registration Number 5006107.

7.      Upon information and belief, MSN filed Abbreviated New Drug Application

("ANDA") No. 220551 ("Defendant's ANDA") with the U.S. Food and Drug Administration

("FDA") seeking approval to engage in the commercial manufacture, use, sale, offer for sale,

and/or importation into the United States of generic viloxazine extended-release capsules,

containing 100 mg, 150 mg, and 200 mg of viloxazine ("Defendant's ANDA Products").

## JURISDICTION AND VENUE

8.     This Court has jurisdiction over the subject matter of this action pursuant to 28

U.S.C. §§ 1331 and 1338(a).

9.     This Court has personal jurisdiction over Defendant under Fed. R. Civ. P. 4(k)(1)

and N.J. Ct. R. 4:4-4.

10.     This Court has personal jurisdiction over MSN at least because, upon information

and belief: (i) MSN maintains a principal place of business in New Jersey located at 20 Duke

Road, Piscataway, New Jersey 08854; (ii) MSN, itself and through related entities and agents,

regularly transacts and solicits business, performs work, and contracts to supply goods and

services in New Jersey and/or derives substantial revenue from goods or services used or

consumed in New Jersey and thus maintains continuous and systematic contacts with this

Judicial District; (iii) MSN, itself and through related entities and agents, is in the business of

developing and manufacturing generic pharmaceutical products for importation, sale, and/or

distribution in the State of New Jersey; (iv) MSN has consented and submitted to this Court's

jurisdiction in prior civil actions and has invoked the benefits and protections of this Court by

asserting counterclaims in prior civil actions;[1] (v) MSN is registered with the State of New

---

[1] *See, e.g., Vifor (International) AG v. MSN Laboratories Private Ltd.*, No. 25-cv-03286, ECF No. 14 (D.N.J.) (filing counterclaims and not contesting personal jurisdiction); *Jazz Pharmaceuticals Ireland Ltd. v. Sandoz Inc.*, No. 24-cv-09110, ECF No. 32 (D.N.J.) (same); *Esperion Therapeutics, Inc. v. MSN Pharmaceuticals Inc.*, No. 24-cv-06386, ECF No. 28 (D.N.J.) (same); *American Regent, Inc. v. MSN Laboratories Private Ltd.*, No. 24-cv-10674, ECF No. 26 (D.N.J.) (same); *Bausch Health Ireland Ltd. v. MSN Laboratories Private Ltd.*, No. 24-cv-07182, ECF No. 8 (D.N.J.) (same); *Esperion Therapeutics, Inc. v. Micro Labs USA, Inc.*, No. 24-cv-05921, ECF No. 84 (D.N.J.) (same); *AbbVie Inc. v. MSN Pharmaceuticals Inc.*, No. 24-cv-04662, ECF No. 31 (D.N.J.) (same); *BeiGene USA, Inc. v. MSN Pharmaceuticals Inc.*, No. 24-

Jersey's Treasury Department Division of Revenue and Enterprise Services as a business operating in New Jersey with Business Identification Number 0400627791; (vi) MSN is registered with the State of New Jersey's Department of Health as a "Manufacturer and Wholesale[r]" with Registration Number 5006107; (vii) MSN, itself and through related entities and agents, has purposefully availed itself of the rights, benefits, and privileges of New Jersey's laws by continuously and systematically placing goods in the stream of commerce for importation, use, sale, offer for sale, and/or distribution throughout the United States, including the State of New Jersey; (viii) MSN's website identifies MSN as a "Specialized Pharmaceutical Generic development and manufacturing facility based out of Piscataway, New Jersey" (*see* https://msnpi.com/ (last visited July 8, 2025)); (ix) MSN's contacts with this Judicial District— e.g., the manufacturing, importation, use, sale, offer for sale, and/or distribution of generic pharmaceutical products (including the accused products at issue in this action)—give rise to and/or are related to Plaintiff's claims; (x) MSN, itself and through related entities and agents, has committed, induced, and/or contributed to acts of patent infringement in New Jersey; and (xi) if Defendant's ANDA receives final approval, Defendant's ANDA Products will be marketed and distributed by MSN in the State of New Jersey, prescribed by physicians practicing in the State of New Jersey, dispensed by pharmacies located within the State of New Jersey, and used by patients in the State of New Jersey.

11.    MSN's website describes its presence in New Jersey as follows:

> With a 225,000 square feet facility built on 15 acres of developed land, the facility is replete with Corporate Offices, Research and Development area, Laboratories, and Manufacturing Units. Reliable, Avant garde equipment from Glatt, Fette, Korsch, Bosch and market-leading brands have been installed. The facility is also

---

cv-01971, ECF No. 20 (D.N.J.) (same); *Catalyst Pharmaceuticals, Inc. v. MSN Pharmaceuticals Inc.*, No. 23-cv-01945, ECF No. 15 (D.N.J.) (not contesting personal jurisdiction).

> equipped with a Vault and Cage and top-of-the-line security
> systems to handle DEA Controlled Substances.
>
> The facility is built with Flame-resistant panels, terminal HEPA
> filters in the manufacturing units and an HVAC design that
> prevents cross-contamination. The infrastructure is also capable of
> warehousing of Pharmaceutical Finished products, raw materials
> including Active Pharmaceutical Ingredients (APIs), Excipients
> and various packing materials.
>
> The facility is strategically located close to the Rutgers University
> Campus between exits 7 and 8 on the interstate 287 East of the
> Piscataway weigh station. Located within proxime distance to Exit
> 10 of the New jersey Turnpike, the Garden State Parkway and
> provides excellent access to New York City and Tri-state region.

*See* https://msnpi.com/ (last visited July 8, 2025).

12.    Upon information and belief, pursuant to § 505(j) of the Federal Food, Drug, and

Cosmetic Act ("FDCA") (codified at 21 U.S.C. § 355(j)), Defendant has prepared, submitted,

and filed with FDA, and FDA has received, Defendant's ANDA seeking approval to engage in

the commercial manufacture, use, importation, offer for sale, and/or sale of Defendant's ANDA

Products before the expiration of the patents-in-suit throughout the United States, including in

this Judicial District.

13.    This Court has personal jurisdiction over Defendant at least because, upon

information and belief, if Defendant's ANDA receives final approval, Defendant's ANDA

Products will be manufactured, sold, distributed, and/or used by Defendant in New Jersey,

prescribed by physicians practicing in New Jersey, and/or administered to patients in New

Jersey.

14.    Upon information and belief, Defendant's acts of preparing and filing

Defendant's ANDA and directing notice of its ANDA submission to Plaintiff are acts with real

and injurious consequences giving rise to this infringement action, including the present and/or

anticipated commercial importation, manufacture, use, and/or sale of Defendant's ANDA Products before the expiration of the patents-in-suit throughout the United States, including in this Judicial District. Because defending against an infringement lawsuit such as this one is an essential and expected part of an ANDA filer's business, Defendant reasonably anticipates being sued in New Jersey.

15. Defendant's ANDA filing implicating the patents-in-suit directly relates to this litigation and is substantially connected with this Judicial District because it reliably and non-speculatively predicts Defendant's intent to market and sell Defendant's ANDA Products in this Judicial District.

16. Defendant has taken the significant step of applying to FDA for approval to engage in future activities—including the marketing of Defendant's ANDA Products—which, upon information and belief, will be purposefully directed at this Judicial District.

17. Venue is proper in this Court under 28 U.S.C. §§ 1391(b), 1391(c), and/or 1400(b).

## FACTS COMMON TO ALL COUNTS

18. Upon information and belief, on or about June 5, 2025, Defendant sent a letter pursuant to § 505(j)(2)(B)(ii) of the Federal Food, Drug, and Cosmetic Act (21 U.S.C. § 355(j)(2)(B)(ii) and 21 C.F.R. § 314.95) regarding the paragraph IV certification that Defendant submitted in Defendant's ANDA and the patents-in-suit (the "Notice Letter") to Supernus at 9715 Key West Avenue, Rockville, Maryland 20850.

19. The Notice Letter included an Offer of Confidential Access ("OCA") to unspecified portions of Defendant's ANDA, purportedly pursuant to 21 U.S.C. § 355(j)(5)(C)(i)(III).

20.     Defendant's OCA accompanying the Notice Letter contained numerous unreasonable and overly restrictive provisions.  Plaintiff proposed revisions that comport with restrictions that "would apply had a protective order been entered for the purpose of protecting trade secrets and other confidential business information." *See* 21 U.S.C. § 355.  Plaintiff and Defendant did not reach agreement on the terms of an Offer of Confidential Access and, to date, Defendant has not produced a copy of Defendant's ANDA to Plaintiff.

21.     According to the Notice Letter, Defendant filed Defendant's ANDA with FDA seeking approval to engage in the commercial manufacture, use, offer for sale, sale, and/or importation into the United States of Defendant's ANDA Products.

22.     Upon information and belief, Defendant is in the business of, *inter alia*: (i) the development and manufacture of generic pharmaceutical products for sale throughout the United States, including throughout the State of New Jersey, and importing generic pharmaceutical products into the United States, including throughout the State of New Jersey; (ii) the preparation, submission, and filing of ANDAs seeking FDA approval to market generic drugs throughout the United States, including throughout the State of New Jersey; and (iii) the distribution of generic pharmaceutical products for sale throughout the United States, including throughout the State of New Jersey.

23.     Upon information and belief, Defendant filed Defendant's ANDA and stands to benefit from its approval.

24.     Upon information and belief, Defendant derives substantial revenue from directly or indirectly selling generic pharmaceutical products throughout the United States, including in this Judicial District.

25.    21 U.S.C. § 355(j)(2)(B)(iv)(II) requires that a letter notifying a patent holder of the filing of an ANDA containing a paragraph IV certification "include a detailed statement of the factual and legal basis of the opinion of the applicant that the patent is invalid or will not be infringed." 21 C.F.R. § 314.95(c)(7) requires that such a letter include "[a] detailed statement of the factual and legal basis of the applicant's opinion that the patent is not valid, unenforceable, or will not be infringed." The detailed statement must include "(i) [f]or each claim of a patent alleged not to be infringed, a full and detailed explanation of why the claim is not infringed" and "(ii) [f]or each claim of a patent alleged to be invalid or unenforceable, a full and detailed explanation of the grounds supporting the allegation." 21 C.F.R. § 314.95(c)(7)(i)-(ii).

26.    Upon information and belief, as of the date of the Notice Letter, Defendant was aware of the statutory provisions and regulations set out in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

27.    The Notice Letter does not disclose any invalidity contentions or opinions specifically directed to: (i) any claims of the '204 patent; (ii) any claims of the '853 patent; or (iii) any claims of the '338 patent. Accordingly, upon information and belief, Defendant acknowledges and admits that the '204 patent, the '853 patent, and the '338 patent are not invalid.

28.    The Notice Letter does not disclose any noninfringement contentions or opinions specifically directed any claims of the '143 patent. Accordingly, upon information and belief, Defendant acknowledges and admits infringement of the '143 patent.

29.    Upon information and belief, the Notice Letter does not disclose any unenforceability contentions for the patents-in-suit.

30.    Supernus's Qelbree® is sold and marketed under New Drug Application ("NDA") No. 211964, which was approved by FDA for the manufacture and sale of viloxazine extended-release capsules 100 mg, 150 mg and 200 mg.

31.    Qelbree® is a selective norepinephrine reuptake inhibitor indicated for the treatment of Attention Deficit Hyperactivity Disorder (ADHD) in adults and pediatric patients 6 years and older.

32.    Qelbree®'s recommended dosage is as follows:

- Pediatric patients 6 to 11 years of age: Recommended starting dosage is 100 mg once daily.  May titrate in increments of 100 mg weekly to the maximum recommended dosage of 400 mg once daily

- Pediatric patients 12 to 17 years of age: Recommended starting dosage is 200 mg once daily.  May titrate after 1 week, by an increment of 200mg, to the maximum recommended dosage of 400 mg once daily

- Adult patients: Recommended starting dosage is 200 mg once daily.  May titrate in increments of 200 mg weekly, to maximum recommended dosage of 600 mg once daily

- Capsules may be swallowed whole or opened and the entire contents sprinkled onto applesauce or pudding

- Severe Renal Impairment: Initial dosage is 100 mg once daily. Titrate in weekly increments of 50 mg to 100 mg to a maximum recommended dosage of 200 mg once daily

See, e.g., http://www.accessdata.fda.gov/drugsatfda_docs/label/2025/211964s013lbl.pdf#page=1 (last visited July 1, 2025).

33.    FDA's publication, titled, "Approved Drug Products with Therapeutic Equivalence Evaluations" (commonly known as the "Orange Book"), lists six (6) patents, specifically the patents-in-suit, as covering Supernus's Qelbree®.  Pursuant to 21 U.S.C.

§§ 355(b)(1) and 355(c)(2), the patents-in-suit were submitted to FDA with or after the approval

of NDA No. 211964.  The patents-in-suit are listed in the Orange Book as covering Qelbree®.

34.    The '204 patent, titled, "Formulations of Viloxazine," was duly and legally issued

by the United States Patent and Trademark Office on June 7, 2016, to Supernus upon assignment

from inventors Michael Vieira, Austin B. Huang, and Padmanabh P. Bhatt.  Supernus owns all

rights, title, and interest in the '204 patent.

35.    The '853 patent, titled, "Formulations of Viloxazine," was duly and legally issued

by the United States Patent and Trademark Office on March 28, 2017, to Supernus upon

assignment from inventors Michael Vieira, Austin B. Huang, and Padmanabh P. Bhatt.  Supernus

owns all rights, title, and interest in the '853 patent.

36.    The '338 patent, titled, "Formulations of Viloxazine," was duly and legally issued

by the United States Patent and Trademark Office on May 30, 2017, to Supernus upon

assignment from inventors Michael Vieira, Austin B. Huang, and Padmanabh P. Bhatt.  Supernus

owns all rights, title, and interest in the '338 patent.

37.    The '753 patent, titled, "Method of Treatment of Attention Deficit/Hyperactivity

Disorder (ADHD)," was duly and legally issued by the United States Patent and Trademark

Office on May 10, 2022, to Supernus upon assignment from inventor Christopher D. Breder.

Supernus owns all rights, title, and interest in the '753 patent.

38.    The '143 patent, titled, "Method of Treatment of Attention Deficit/Hyperactivity

Disorder (ADHD)," was duly and legally issued by the United States Patent and Trademark

Office on October 4, 2022, to Supernus upon assignment from inventor Christopher D. Breder.

Supernus owns all rights, title, and interest in the '143 patent.

39.     The '523 patent, titled, "Method of Treatment of Attention Deficit/Hyperactivity Disorder (ADHD)," was duly and legally issued by the United States Patent and Trademark Office on October 22, 2024, to Supernus upon assignment from inventor Christopher D. Breder. Supernus owns all rights, title, and interest in the '523 patent.

40.     Upon information and belief, Defendant's ANDA is based upon Qelbree® (viloxazine extended-release capsules), 100 mg, 150 mg, and 200 mg, as its reference listed drug.

41.     Upon information and belief, Defendant's ANDA Products are viloxazine extended-release capsules, 100 mg, 150 mg, and 200 mg.

42.     Upon information and belief, Defendant has represented to FDA in Defendant's ANDA that Defendant's ANDA Products are bioequivalent to Qelbree®.

43.     21 U.S.C. § 355(j)(2)(A)(i) requires that an ANDA contain "information to show that the conditions of use prescribed, recommended, or suggested in the labeling proposed for the new drug have been previously approved for a drug listed under paragraph (7)."  In addition, 21 U.S.C. § 355(j)(2)(A)(v) provides that an ANDA must contain "information to show that the labeling proposed for the new drug is the same as the labeling approved for the listed drug referred to in clause (i) except for changes required because of differences approved under a petition filed under subparagraph (C) or because the new drug and the listed drug are produced or distributed by different manufacturers."

44.     The Notice Letter does not indicate that Defendant intends to market Defendant's ANDA Products with labeling that materially differs from the Qelbree® label, including, for example, in terms of indications and usage, dosage and administration, dosage forms and strengths, contraindications, warnings and precautions, adverse reactions, drug interactions, use in specific populations, overdosage, description, clinical pharmacology, nonclinical toxicology,

clinical studies, how supplied/storage and handling, patient counseling information, or

composition of Defendant's ANDA Products.  *See, e.g.,*

https://www.accessdata.fda.gov/drugsatfda_docs/label/2025/211964s013lbl.pdf#page=21 (last

visited June 25, 2025).

45.     Upon information and belief, the proposed prescribing information for

Defendant's ANDA Products includes a section titled, "Indication and Usage" stating that

Defendant's ANDA Products are "indicated for the treatment of Attention-Deficit Hyperactivity

Disorder (ADHD) in adults and pediatric patients 6 years and older."

46.     Upon information and belief, the proposed prescribing information for

Defendant's ANDA Products includes a section titled, "Dosage and Administration," containing

information about the recommended dosage for adult and pediatric patients.  Upon information

and belief, the proposed prescribing information for Defendant's ANDA Products recommends:

(i) administering 100 mg orally once daily as the recommended starting dosage for pediatric

patients 6 to 11 years of age, which may be titrated in increments of 100 mg at weekly intervals

to a maximum recommended dose of 400 mg once daily, depending on response and tolerability,

(ii) administering 200 mg orally once daily as the recommended starting dosage for pediatric

patients 12 to 17 years of age, which may be titrated in increments of 200 mg after one week to

the maximum recommended dosage of 400 mg once daily, depending on response and

tolerability; and (iii) administering 200 mg orally once daily as the recommended starting dosage

for adults, which may be titrated in increments of 200 mg weekly to the maximum recommended

dosage of 600 mg once daily, depending on response and tolerability.

47.     Upon information and belief, the proposed prescribing information for

Defendant's ANDA Products includes a section titled, "Mechanism of Action," stating that

"[t]he mechanism of action of viloxazine in the treatment of ADHD is unclear; however, it is thought to be through inhibiting the reuptake of norepinephrine."

48.     Upon information and belief, the proposed prescribing information for Defendant's ANDA Products includes a section titled, "Pharmacodynamics," stating that Defendant's ANDA Products also "bind[] to and inhibit[] the norepinephrine transporter (Ki=0.13 μM)" and "bind[] to and exhibit[] partial agonist activity at the serotonin 5-HT2C receptor (Ki=0.66 μM)."

49.     Upon information and belief, Defendant's ANDA Products will have labeling that instruct patients to call their healthcare provider or get emergency help if they experience "new or worse depression" or "new or worse anxiety."

## FIRST COUNT
### (Defendant's Infringement of the '204 Patent)

50.     Supernus repeats and re-alleges each of the foregoing Paragraphs as if fully set forth herein.

51.     Upon information and belief, Defendant submitted Defendant's ANDA to FDA pursuant to § 505(j) of the FDCA (codified at 21 U.S.C. § 355(j)) for the purpose of seeking FDA approval to market Defendant's ANDA Products prior to the expiration of the '204 patent.

52.     Upon information and belief, Defendant submitted Defendant's ANDA with a paragraph IV certification to the '204 patent for the purpose of obtaining FDA approval to engage in the commercial manufacture, use, sale, offering for sale, and/or importation of Defendant's ANDA Products before the expiration of the '204 patent.

53.     Upon information and belief, as of the date of the Notice Letter, Defendant was aware of the statutory provisions and regulations in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

54.     Defendant sent the Notice Letter to Supernus purportedly pursuant to 21 U.S.C. § 355(j)(2)(B)(iv) and 21 C.F.R. § 314.95(d)(1).

55.     Under 35 U.S.C. § 271(e)(2)(A), the submission of Defendant's ANDA with a paragraph IV certification to the '204 patent for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale of Defendant's ANDA Products before the expiration of the '204 patent is itself an act of infringement of the '204 patent.

56.     Upon information and belief, Defendant will commercially manufacture, use, offer to sell, sell within the United States, and/or import into the United States Defendant's ANDA Products upon receiving final FDA approval.

57.     Upon information and belief, Defendant's commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Defendant's ANDA Products would infringe, directly and/or indirectly, one or more claims of the '204 patent under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c).

58.     Upon information and belief, the commercial manufacture, use, offer to sell, or sale of the Defendant's ANDA Products prior to the expiration of the '204 patent will directly infringe the '204 patent under 35 U.S.C. § 271(a), will actively induce another's infringement of the '204 patent under 35 U.S.C. § 271(b), and will constitute contributory infringement of the '204 patent under 35 U.S.C. § 271(c).

59.     Upon information and belief, Defendant's ANDA Products will be marketed with labeling that substantially copies the labeling for Qelbree®.

60.     Upon information and belief, the label for Defendant's ANDA Products that will be made available to third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) upon FDA approval of

Defendant's ANDA will encourage such third parties to infringe one or more of the claims of the '204 patent.

61.    Upon information and belief, the use of Defendant's ANDA Products by third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) according to the instructions on the label of Defendant's ANDA Products will constitute an act of direct infringement of one or more of the claims of the '204 patent.

62.    Upon information and belief, by making, using, selling, offering for sale, and/or importing into the United States Defendant's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendant will knowingly encourage, advise, instruct, urge, aid, and otherwise induce third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) to make, use, sell, offer for sale, and/or import into the United States products that infringe the claims, or the making or use of which infringes the claims, of the '204 patent.

63.    Upon information and belief, Defendant intends such infringement by third parties, as Defendant is in the business of developing, manufacturing, marketing, selling, and distributing generic pharmaceutical products throughout the United States.  Upon information and belief, Defendant knows that its actions will induce acts that constitute direct infringement of claims of the '204 patent by, e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists.

64.    Upon information and belief, by offering for sale or selling within the United States or importing into the United States Defendant's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendant will contribute to the

infringement of the '204 patent by third parties because: (i) Defendant's ANDA Products constitute a material part of the formulations claimed in the '204 patent; (ii) Defendant knows or should know that Defendant's ANDA Products will be made for uses that directly infringe the formulations claimed in the '204 patent; and (iii) Defendant's ANDA Products are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

65.    Upon information and belief, Defendant has acted with full knowledge of the '204 patent and its claims and without a reasonable basis for believing that Defendant would not be liable for infringement of the '204 patent.  Defendant knew of the existence of the '204 patent, as evidenced by Defendant's filing of Defendant's ANDA with a paragraph IV certification specifically referencing the '204 patent.  Notwithstanding this knowledge, Defendant has continued to signal its intent to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Defendant's ANDA Products before the expiration of the patents-in-suit.  Upon information and belief, through such activities, Defendant specifically intends infringement of the '204 patent.

66.    Upon information and belief, the actions described herein relating to Defendant's ANDA and Defendant's ANDA Products were done by and for the benefit of Defendant.

67.    This case is "exceptional," and Supernus is entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285.

68.    Unless Defendant is permanently enjoined by this Court, the acts of infringement set forth above will cause Supernus irreparable harm for which there is no adequate remedy at law.

## SECOND COUNT
### (Defendant's Infringement of the '853 Patent)

69.     Supernus repeats and re-alleges each of the foregoing Paragraphs as if fully set forth herein.

70.     Upon information and belief, Defendant submitted Defendant's ANDA to FDA pursuant to § 505(j) of the FDCA (codified at 21 U.S.C. § 355(j)) for the purpose of seeking FDA approval to market Defendant's ANDA Products prior to the expiration of the '853 patent.

71.     Upon information and belief, Defendant submitted Defendant's ANDA with a paragraph IV certification to the '853 patent for the purpose of obtaining FDA approval to engage in the commercial manufacture, use, sale, offering for sale, and/or importation of Defendant's ANDA Products before the expiration of the '853 patent.

72.     Upon information and belief, as of the date of the Notice Letter, Defendant was aware of the statutory provisions and regulations in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

73.     Defendant sent the Notice Letter to Supernus purportedly pursuant to 21 U.S.C. § 355(j)(2)(B)(iv) and 21 C.F.R. § 314.95(d)(1).

74.     Under 35 U.S.C. § 271(e)(2)(A), the submission of Defendant's ANDA with a paragraph IV certification to the '853 patent for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale of Defendant's ANDA Products before the expiration of the '853 patent is itself an act of infringement of the '853 patent.

75.     Upon information and belief, Defendant will commercially manufacture, use, offer to sell, sell within the United States, and/or import into the United States Defendant's ANDA Products upon receiving final FDA approval.

76.     Upon information and belief, Defendant's commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Defendant's ANDA Products would infringe, directly and/or indirectly, one or more claims of the '853 patent under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c).

77.     Upon information and belief, the commercial manufacture, use, offer to sell, or sale of the Defendant's ANDA Products prior to the expiration of the '853 patent will directly infringe the '853 patent under 35 U.S.C. § 271(a), will actively induce another's infringement of the '853 patent under 35 U.S.C. § 271(b), and will constitute contributory infringement of the '853 patent under 35 U.S.C. § 271(c).

78.     Upon information and belief, Defendant's ANDA Products will be marketed with labeling that substantially copies the labeling for Qelbree®.

79.     Upon information and belief, the label for Defendant's ANDA Products that will be made available to third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) upon FDA approval of Defendant's ANDA will encourage such third parties to perform one or more of the methods claimed in the '853 patent.

80.     Upon information and belief, the use of Defendant's ANDA Products by third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) according to the instructions on the label of Defendant's ANDA Products will constitute an act of direct infringement of one or more of the methods claimed in the '853 patent.

81.     Upon information and belief, by making, using, selling, offering for sale, and/or importing into the United States Defendant's ANDA Products and/or distributing the

corresponding labeling, package insert, and/or medication guide, Defendant will knowingly encourage, advise, instruct, urge, aid, and otherwise induce third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) to make, use, sell, offer for sale, and/or import into the United States products that infringe the claims, or the making or use of which infringes the claims, of the '853 patent.

82.    Upon information and belief, Defendant intends such infringement by third parties, as Defendant is in the business of developing, manufacturing, marketing, selling, and distributing generic pharmaceutical products throughout the United States.  Upon information and belief, Defendant knows that its actions will induce acts that constitute direct infringement of claims of the '853 patent by, e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists.

83.    Upon information and belief, by offering for sale or selling within the United States or importing into the United States Defendant's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendant will contribute to the infringement of the '853 patent by third parties because: (i) Defendant's ANDA Products constitute a material part of the methods of treatment claimed in the '853 patent; (ii) Defendant knows or should know that Defendant's ANDA Products will be made for uses that directly infringe the methods of treatment claimed in the '853 patent; and (iii) Defendant's ANDA Products are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

84.    Upon information and belief, Defendant has acted with full knowledge of the '853 patent and its claims and without a reasonable basis for believing that Defendant would not be liable for infringement of the '853 patent.  Defendant knew of the existence of the '853 patent, as

evidenced by Defendant's filing of Defendant's ANDA with a paragraph IV certification specifically referencing the '853 patent. Notwithstanding this knowledge, Defendant has continued to signal its intent to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Defendant's ANDA Products before the expiration of the patents-in-suit. Upon information and belief, through such activities, Defendant specifically intends infringement of the '853 patent.

85.    Upon information and belief, the actions described herein relating to Defendant's ANDA and Defendant's ANDA Products were done by and for the benefit of Defendant.

86.    This case is "exceptional," and Supernus is entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285.

87.    Unless Defendant is permanently enjoined by this Court, the acts of infringement set forth above will cause Supernus irreparable harm for which there is no adequate remedy at law.

## THIRD COUNT
### (Defendant's Infringement of the '338 Patent)

88.    Supernus repeats and re-alleges each of the foregoing Paragraphs as if fully set forth herein.

89.    Upon information and belief, Defendant submitted Defendant's ANDA to FDA pursuant to § 505(j) of the FDCA (codified at 21 U.S.C. § 355(j)) for the purpose of seeking FDA approval to market Defendant's ANDA Products prior to the expiration of the '338 patent.

90.    Upon information and belief, Defendant submitted Defendant's ANDA with a paragraph IV certification to the '338 patent for the purpose of obtaining FDA approval to engage in the commercial manufacture, use, sale, offering for sale, and/or importation of Defendant's ANDA Products before the expiration of the '338 patent.

91.     Upon information and belief, as of the date of the Notice Letter, Defendant was aware of the statutory provisions and regulations in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

92.     Defendant sent the Notice Letter to Supernus purportedly pursuant to 21 U.S.C. § 355(j)(2)(B)(iv) and 21 C.F.R. § 314.95(d)(1).

93.     Under 35 U.S.C. § 271(e)(2)(A), the submission of Defendant's ANDA with a paragraph IV certification to the '338 patent for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale of Defendant's ANDA Products before the expiration of the '338 patent is itself an act of infringement of the '338 patent.

94.     Upon information and belief, Defendant will commercially manufacture, use, offer to sell, sell within the United States, and/or import into the United States Defendant's ANDA Products upon receiving final FDA approval.

95.     Upon information and belief, Defendant's commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Defendant's ANDA Products would infringe, directly and/or indirectly, one or more claims of the '338 patent under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c).

96.     Upon information and belief, the commercial manufacture, use, offer to sell, or sale of the Defendant's ANDA Products prior to the expiration of the '338 patent will directly infringe the '338 patent under 35 U.S.C. § 271(a), will actively induce another's infringement of the '338 patent under 35 U.S.C. § 271(b), and will constitute contributory infringement of the '338 patent under 35 U.S.C. § 271(c).

97.     Upon information and belief, Defendant's ANDA Products will be marketed with labeling that substantially copies the labeling for Qelbree®.

98.    Upon information and belief, the label for Defendant's ANDA Products that will be made available to third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) upon FDA approval of Defendant's ANDA will encourage such third parties to infringe one or more of the claims of the '338 patent.

99.    Upon information and belief, the use of Defendant's ANDA Products by third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) according to the instructions on the label of Defendant's ANDA Products will constitute an act of direct infringement of one or more of the claims of the '338 patent.

100.    Upon information and belief, by making, using, selling, offering for sale, and/or importing into the United States Defendant's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendant will knowingly encourage, advise, instruct, urge, aid, and otherwise induce third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) to make, use, sell, offer for sale, and/or import into the United States products that infringe the claims, or the making or use of which infringes the claims, of the '338 patent.

101.    Upon information and belief, Defendant intends such infringement by third parties, as Defendant is in the business of developing, manufacturing, marketing, selling, and distributing generic pharmaceutical products throughout the United States.  Upon information and belief, Defendant knows that its actions will induce acts that constitute direct infringement of claims of the '338 patent by, e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists.

102.    Upon information and belief, by offering for sale or selling within the United States or importing into the United States Defendant's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendant will contribute to the infringement of the '338 patent by third parties because: (i) Defendant's ANDA Products constitute a material part of the formulations claimed in the '338 patent; (ii) Defendant knows or should know that Defendant's ANDA Products will be made for uses that directly infringe the formulations claimed in the '338 patent; and (iii) Defendant's ANDA Products are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

103.    Upon information and belief, Defendant has acted with full knowledge of the '338 patent and its claims and without a reasonable basis for believing that Defendant would not be liable for infringement of the '338 patent.  Defendant knew of the existence of the '338 patent, as evidenced by Defendant's filing of Defendant's ANDA with a paragraph IV certification specifically referencing the '338 patent.  Notwithstanding this knowledge, Defendant has continued to signal its intent to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Defendant's ANDA Products before the expiration of the patents-in-suit.  Upon information and belief, through such activities, Defendant specifically intends infringement of the '338 patent.

104.    Upon information and belief, the actions described herein relating to Defendant's ANDA and Defendant's ANDA Products were done by and for the benefit of Defendant.

105.    This case is "exceptional," and Supernus is entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285.

106.    Unless Defendant is permanently enjoined by this Court, the acts of infringement set forth above will cause Supernus irreparable harm for which there is no adequate remedy at law.

## FOURTH COUNT
### (Defendant's Infringement of the '753 Patent)

107.    Supernus repeats and re-alleges each of the foregoing Paragraphs as if fully set forth herein.

108.    Upon information and belief, Defendant submitted Defendant's ANDA to FDA pursuant to § 505(j) of the FDCA (codified at 21 U.S.C. § 355(j)) for the purpose of seeking FDA approval to market Defendant's ANDA Products prior to the expiration of the '753 patent.

109.    Upon information and belief, Defendant submitted Defendant's ANDA with a paragraph IV certification to the '753 patent for the purpose of obtaining FDA approval to engage in the commercial manufacture, use, sale, offering for sale, and/or importation of Defendant's ANDA Products before the expiration of the '753 patent.

110.    Upon information and belief, as of the date of the Notice Letter, Defendant was aware of the statutory provisions and regulations in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

111.    Defendant sent the Notice Letter to Supernus purportedly pursuant to 21 U.S.C. § 355(j)(2)(B)(iv) and 21 C.F.R. § 314.95(d)(1).

112.    Under 35 U.S.C. § 271(e)(2)(A), the submission of Defendant's ANDA with a paragraph IV certification to the '753 patent for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale of Defendant's ANDA Products before the expiration of the '753 patent is itself an act of infringement of the '753 patent.

113.    Upon information and belief, Defendant will commercially manufacture, use, offer to sell, sell within the United States, and/or import into the United States Defendant's ANDA Products upon receiving final FDA approval.

114.    Upon information and belief, Defendant's commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Defendant's ANDA Products would infringe, directly and/or indirectly, one or more claims of the '753 patent under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c).

115.    Upon information and belief, the commercial manufacture, use, offer to sell, or sale of the Defendant's ANDA Products prior to the expiration of the '753 patent will directly infringe the '753 patent under 35 U.S.C. § 271(a), will actively induce another's infringement of the '753 patent under 35 U.S.C. § 271(b), and will constitute contributory infringement of the '753 patent under 35 U.S.C. § 271(c).

116.    Upon information and belief, Defendant's ANDA Products will be marketed with labeling that substantially copies the labeling for Qelbree®.

117.    Upon information and belief, the label for Defendant's ANDA Products that will be made available to third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) upon FDA approval of Defendant's ANDA will encourage such third parties to perform one or more of the methods claimed in the '753 patent.

118.    Upon information and belief, the use of Defendant's ANDA Products by third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) according to the instructions on the label of

Defendant's ANDA Products will constitute an act of direct infringement of one or more of the methods claimed in the '753 patent.

119.    Upon information and belief, by making, using, selling, offering for sale, and/or importing into the United States Defendant's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendant will knowingly encourage, advise, instruct, urge, aid, and otherwise induce third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) to make, use, sell, offer for sale, and/or import into the United States products that infringe the claims, or the making or use of which infringes the claims, of the '753 patent.

120.    Upon information and belief, Defendant intends such infringement by third parties, as Defendant is in the business of developing, manufacturing, marketing, selling, and distributing generic pharmaceutical products throughout the United States.  Upon information and belief, Defendant knows that its actions will induce acts that constitute direct infringement of claims of the '753 patent by, e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists.

121.    Upon information and belief, by offering for sale or selling within the United States or importing into the United States Defendant's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendant will contribute to the infringement of the '753 patent by third parties because: (i) Defendant's ANDA Products constitute a material part of the methods claimed in the '753 patent; (ii) Defendant knows or should know that Defendant's ANDA Products will be made for uses that directly infringe the methods claimed in the '753 patent; and (iii) Defendant's ANDA Products are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

122.    Upon information and belief, Defendant has acted with full knowledge of the '753 patent and its claims and without a reasonable basis for believing that Defendant would not be liable for infringement of the '753 patent.  Defendant knew of the existence of the '753 patent, as evidenced by Defendant's filing of Defendant's ANDA with a paragraph IV certification specifically referencing the '753 patent.  Notwithstanding this knowledge, Defendant has continued to signal its intent to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Defendant's ANDA Products before the expiration of the patents-in-suit.  Upon information and belief, through such activities, Defendant specifically intends infringement of the '753 patent.

123.    Upon information and belief, the actions described herein relating to Defendant's ANDA and Defendant's ANDA Products were done by and for the benefit of Defendant.

124.    This case is "exceptional," and Supernus is entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285.

125.    Unless Defendant is permanently enjoined by this Court, the acts of infringement set forth above will cause Supernus irreparable harm for which there is no adequate remedy at law.

**FIFTH COUNT**
**(Defendant's Infringement of the '143 Patent)**

126.    Supernus repeats and re-alleges each of the foregoing Paragraphs as if fully set forth herein.

127.    Upon information and belief, Defendant submitted Defendant's ANDA to FDA pursuant to § 505(j) of the FDCA (codified at 21 U.S.C. § 355(j)) for the purpose of seeking FDA approval to market Defendant's ANDA Products prior to the expiration of the '143 patent.

128.    Upon information and belief, Defendant submitted Defendant's ANDA with a paragraph IV certification to the '143 patent for the purpose of obtaining FDA approval to engage in the commercial manufacture, use, sale, offering for sale, and/or importation of Defendant's ANDA Products before the expiration of the '143 patent.

129.    Upon information and belief, as of the date of the Notice Letter, Defendant was aware of the statutory provisions and regulations in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

130.    Defendant sent the Notice Letter to Supernus purportedly pursuant to 21 U.S.C. § 355(j)(2)(B)(iv) and 21 C.F.R. § 314.95(d)(1).

131.    Under 35 U.S.C. § 271(e)(2)(A), the submission of Defendant's ANDA with a paragraph IV certification to the '143 patent for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale of Defendant's ANDA Products before the expiration of the '143 patent is itself an act of infringement of the '143 patent.

132.    Upon information and belief, Defendant will commercially manufacture, use, offer to sell, sell within the United States, and/or import into the United States Defendant's ANDA Products upon receiving final FDA approval.

133.    Upon information and belief, Defendant's commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Defendant's ANDA Products would infringe, directly and/or indirectly, one or more claims of the '143 patent under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c).

134.    Upon information and belief, the commercial manufacture, use, offer to sell, or sale of the Defendant's ANDA Products prior to the expiration of the '143 patent will directly infringe the '143 patent under 35 U.S.C. § 271(a), will actively induce another's infringement of

the '143 patent under 35 U.S.C. § 271(b), and will constitute contributory infringement of the '143 patent under 35 U.S.C. § 271(c).

135.    Upon information and belief, Defendant's ANDA Products will be marketed with labeling that substantially copies the labeling for Qelbree®.

136.    Upon information and belief, the label for Defendant's ANDA Products that will be made available to third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) upon FDA approval of Defendant's ANDA will encourage such third parties to perform one or more of the methods claimed in the '143 patent.

137.    Upon information and belief, the use of Defendant's ANDA Products by third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) according to the instructions on the label of Defendant's ANDA Products will constitute an act of direct infringement of one or more of the methods claimed in the '143 patent.

138.    Upon information and belief, by making, using, selling, offering for sale, and/or importing into the United States Defendant's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendant will knowingly encourage, advise, instruct, urge, aid, and otherwise induce third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) to make, use, sell, offer for sale, and/or import into the United States products that infringe the claims, or the making or use of which infringes the claims, of the '143 patent.

139.    Upon information and belief, Defendant intends such infringement by third parties, as Defendant is in the business of developing, manufacturing, marketing, selling, and

distributing generic pharmaceutical products throughout the United States.  Upon information and belief, Defendant knows that its actions will induce acts that constitute direct infringement of claims of the '143 patent by, e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists.

140.    Upon information and belief, by offering for sale or selling within the United States or importing into the United States Defendant's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendant will contribute to the infringement of the '143 patent by third parties because: (i) Defendant's ANDA Products constitute a material part of the methods of treatment claimed in the '143 patent; (ii) Defendant knows or should know that Defendant's ANDA Products will be made for uses that directly infringe the methods of treatment claimed in the '143 patent; and (iii) Defendant's ANDA Products are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

141.    Upon information and belief, Defendant has acted with full knowledge of the '143 patent and its claims and without a reasonable basis for believing that Defendant would not be liable for infringement of the '143 patent.  Defendant knew of the existence of the '143 patent, as evidenced by Defendant's filing of Defendant's ANDA with a paragraph IV certification specifically referencing the '143 patent.  Notwithstanding this knowledge, Defendant has continued to signal its intent to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Defendant's ANDA Products before the expiration of the patents-in-suit.  Upon information and belief, through such activities, Defendant specifically intends infringement of the '143 patent.

142.    Upon information and belief, the actions described herein relating to Defendant's ANDA and Defendant's ANDA Products were done by and for the benefit of Defendant.

143.    This case is "exceptional," and Supernus is entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285.

144.    Unless Defendant is permanently enjoined by this Court, the acts of infringement set forth above will cause Supernus irreparable harm for which there is no adequate remedy at law.

<u>**SIXTH COUNT**</u>
**(Defendant's Infringement of the '523 Patent)**

145.    Supernus repeats and re-alleges each of the foregoing Paragraphs as if fully set forth herein.

146.    Upon information and belief, Defendant submitted Defendant's ANDA to FDA pursuant to § 505(j) of the FDCA (codified at 21 U.S.C. § 355(j)) for the purpose of seeking FDA approval to market Defendant's ANDA Products prior to the expiration of the '523 patent.

147.    Upon information and belief, Defendant submitted Defendant's ANDA with a paragraph IV certification to the '523 patent for the purpose of obtaining FDA approval to engage in the commercial manufacture, use, sale, offering for sale, and/or importation of Defendant's ANDA Products before the expiration of the '523 patent.

148.    Upon information and belief, as of the date of the Notice Letter, Defendant was aware of the statutory provisions and regulations in 21 U.S.C. § 355(j)(2)(B)(iv)(II) and 21 C.F.R. § 314.95(c)(7).

149.    Defendant sent the Notice Letter to Supernus purportedly pursuant to 21 U.S.C. § 355(j)(2)(B)(iv) and 21 C.F.R. § 314.95(d)(1).

150.    Under 35 U.S.C. § 271(e)(2)(A), the submission of Defendant's ANDA with a paragraph IV certification to the '523 patent for the purpose of obtaining approval to engage in the commercial manufacture, use, or sale of Defendant's ANDA Products before the expiration of the '523 patent is itself an act of infringement of the '523 patent.

151.    Upon information and belief, Defendant will commercially manufacture, use, offer to sell, sell within the United States, and/or import into the United States Defendant's ANDA Products upon receiving final FDA approval.

152.    Upon information and belief, Defendant's commercial manufacture, use, sale, offer for sale, and/or importation into the United States of Defendant's ANDA Products would infringe, directly and/or indirectly, one or more claims of the '523 patent under 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c).

153.    Upon information and belief, the commercial manufacture, use, offer to sell, or sale of the Defendant's ANDA Products prior to the expiration of the '523 patent will directly infringe the '523 patent under 35 U.S.C. § 271(a), will actively induce another's infringement of the '523 patent under 35 U.S.C. § 271(b), and will constitute contributory infringement of the '523 patent under 35 U.S.C. § 271(c).

154.    Upon information and belief, Defendant's ANDA Products will be marketed with labeling that substantially copies the labeling for Qelbree®.

155.    Upon information and belief, the label for Defendant's ANDA Products that will be made available to third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) upon FDA approval of Defendant's ANDA will encourage such third parties to perform one or more of the methods claimed in the '523 patent.

156.    Upon information and belief, the use of Defendant's ANDA Products by third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) according to the instructions on the label of Defendant's ANDA Products will constitute an act of direct infringement of one or more of the methods claimed in the '523 patent.

157.    Upon information and belief, by making, using, selling, offering for sale, and/or importing into the United States Defendant's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendant will knowingly encourage, advise, instruct, urge, aid, and otherwise induce third parties (e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists) to make, use, sell, offer for sale, and/or import into the United States products that infringe the claims, or the making or use of which infringes the claims, of the '523 patent.

158.    Upon information and belief, Defendant intends such infringement by third parties, as Defendant is in the business of developing, manufacturing, marketing, selling, and distributing generic pharmaceutical products throughout the United States.  Upon information and belief, Defendant knows that its actions will induce acts that constitute direct infringement of claims of the '523 patent by, e.g., wholesalers, distributors, retailers, subjects, patients, caretakers, medical practitioners, physicians, and/or pharmacists.

159.    Upon information and belief, by offering for sale or selling within the United States or importing into the United States Defendant's ANDA Products and/or distributing the corresponding labeling, package insert, and/or medication guide, Defendant will contribute to the infringement of the '523 patent by third parties because: (i) Defendant's ANDA Products constitute a material part of the methods of treatment claimed in the '523 patent; (ii) Defendant

knows or should know that Defendant's ANDA Products will be made for uses that directly infringe the methods of treatment claimed in the '523 patent; and (iii) Defendant's ANDA Products are not staple articles or commodities of commerce suitable for substantial noninfringing uses.

160.    Upon information and belief, Defendant has acted with full knowledge of the '523 patent and its claims and without a reasonable basis for believing that Defendant would not be liable for infringement of the '523 patent.  Defendant knew of the existence of the '523 patent, as evidenced by Defendant's filing of Defendant's ANDA with a paragraph IV certification specifically referencing the '523 patent.  Notwithstanding this knowledge, Defendant has continued to signal its intent to engage in the manufacture, use, offer for sale, sale, marketing, distribution, and/or importation of the Defendant's ANDA Products before the expiration of the patents-in-suit.  Upon information and belief, through such activities, Defendant specifically intends infringement of the '523 patent.

161.    Upon information and belief, the actions described herein relating to Defendant's ANDA and Defendant's ANDA Products were done by and for the benefit of Defendant.

162.    This case is "exceptional," and Supernus is entitled to an award of reasonable attorneys' fees under 35 U.S.C. § 285.

163.    Unless Defendant is permanently enjoined by this Court, the acts of infringement set forth above will cause Supernus irreparable harm for which there is no adequate remedy at law.

## **Prayer for Relief**

WHEREFORE, Supernus respectfully requests the following relief:

i.    A Judgment declaring that the patents-in-suit are enforceable and not invalid;

ii.    A Judgment, pursuant to 35 U.S.C. § 271(e)(2)(A), declaring that the submission to FDA and filing of Defendant's ANDA with a paragraph IV certification for the purpose of obtaining approval for the commercial manufacture, use, offer for sale, sale, and/or importation into the United States of Defendant's ANDA Products was an act of infringement of the patents-in-suit by Defendant;

iii.    A Judgment pursuant to 35 U.S.C. § 271(a), 35 U.S.C. § 271(b), and/or 35 U.S.C. § 271(c), declaring that the commercial manufacture, use, offering to sell, or sale within the United States, and/or importation into the United States, of Defendant's ANDA Products before the expiration of the patents-in-suit (including any regulatory extensions) would directly and/or indirectly infringe the patents-in-suit;

iv.    An Order, pursuant to 35 U.S.C. §§ 271(e)(4)(A), 281, and 283, that the effective date of any approval of Defendant's ANDA Products shall be no earlier than the latest date on which the patents-in-suit expire (including any regulatory extensions);

v.    An Order, pursuant to 35 U.S.C. §§ 271(e)(4)(B), 281, and 283, preliminarily and permanently enjoining Defendant and its officers, agents, servants, employees, and attorneys, and any person in active concert or participation or privity with Defendant, from engaging in the commercial manufacture, use, offering to sell, or sale within the United States, and/or importation in the United States, of Defendant's ANDA Products until the expiration of the patents-in-suit (including any regulatory extensions);

vi.    A Judgment, pursuant to 35 U.S.C. §§ 271(e)(4)(C) and 284, awarding Supernus damages or other monetary relief if Defendant commercially manufactures, uses, offers to sell, or sells within the United States, and/or imports into the United States, any product that is the subject of Defendant's ANDA that infringes the patents-in-suit;

vii.    A Judgment, pursuant to 35 U.S.C. §§ 271(e)(4)(C) and 284, declaring that Defendant's infringement of the patents-in-suit is willful and awarding Supernus enhanced damages if Defendant commercially manufactures, uses, offers to sell, or sells within the United States, and/or imports into the United States, any product that is the subject of Defendant's ANDA that infringes the patents-in-suit (including any regulatory extensions);

viii.    A Judgment, pursuant to 35 U.S.C. § 285, declaring that this is an exceptional case and awarding Supernus its attorneys' fees and costs; and

ix.    Such other and further relief as this Court may deem just and proper.

Dated: July 11, 2025

By: s/  William C. Baton
     William C. Baton
     Alexander L. Callo
     **SAUL EWING LLP**
     One Riverfront Plaza
     1037 Raymond Blvd., Suite 1520
     Newark, NJ 07102
     wbaton@saul.com

     OF COUNSEL:

     Edgar H. Haug
     Nicholas F. Giove
     Andrew S. Wasson
     Kaitlin M. Farrell
     **HAUG PARTNERS LLP**
     745 Fifth Avenue
     New York, New York 10151
     (212) 588-0800
     ehaug@haugpartners.com
     ngiove@haugpartners.com
     awasson@haugpartners.com
     kfarrell@haugpartners.com

     *Attorneys for Plaintiff*
     *Supernus Pharmaceuticals, Inc.*

## CERTIFICATION PURSUANT TO LOCAL CIVIL RULES 11.2 & 40.1

I hereby certify that the matter in controversy involves the same plaintiff, same drug product, and same patents that are at issue in the matters captioned *Supernus Pharmaceuticals, Inc. v. Appco Pharma LLC, et al.*, C.A. No. 25-12183 (MEF)(MAH) (D.N.J.), *Supernus Pharmaceuticals, Inc. v. Apotex Inc.*, C.A. No. 25-12184 (MEF)(MAH) (D.N.J.), *Supernus Pharmaceuticals, Inc. v. Aurobindo Pharma Limited, et al.*, C.A. No. 25-12186 (MEF)(MAH) (D.N.J.), *Supernus Pharmaceuticals, Inc. v. Zydus Lifesciences Global FZE, et al.*, C.A. No. 25-12188 (MEF)(MAH) (D.N.J.), and *Supernus Pharmaceuticals, Inc. v. Creekwood Pharmaceuticals, LLC*, C.A. No. 25-13201 (MEF)(MAH) (D.N.J.).

The matter in controversy also involves the same plaintiff, same drug product, and same patents that are at issue in the second-filed actions captioned *Supernus Pharmaceuticals, Inc. v. Appco Pharma LLC et al*., C.A. No. 25-00807-JLH (D. Del.), and *Supernus Pharmaceuticals, Inc. v. Aurobindo Pharma Limited, et al.*, No. 25-00808-JLH (D. Del.).

To the best of my knowledge, this matter is not the subject of any other action pending in any court or of any pending arbitration or administrative proceeding.

Dated: July 11, 2025

By: s/ William C. Baton
  William C. Baton
  Alexander L. Callo

OF COUNSEL:
Edgar H. Haug
Nicholas F. Giove
Andrew S. Wasson
Kaitlin M. Farrell
**HAUG PARTNERS LLP**
745 Fifth Avenue
New York, NY 10151

**SAUL EWING LLP**
One Riverfront Plaza
1037 Raymond Blvd., Suite 1520
Newark, NJ 07102
wbaton@saul.com

*Attorneys for Plaintiff*
*Supernus Pharmaceuticals, Inc.*